Law Offices of Sara L. Bloom
1120 Huffman Rd. Ste 24-785
Anchorage, AK 99515
(907) 519-3613
f(907) 345-8570
sara@907lawyer.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

AT ANCHORAGE

| | |
|---|---|
| TRACY MASON AND ANGELA MASON<br>553 Diamond 3 Road<br>Corvallis, Montana, 59828<br><br>Plaintiffs,<br><br>v.<br><br>BP EXPLORATION (ALASKA) INC., STATE OF ALASKA, GAS CLIP TECHNOLOGIES,<br><br>Defendants. | Case No. |

## **COMPLAINT**

Plaintiffs, Tracy Mason ("Plaintiff Mr. Mason" or "Mr. Mason), and

Angela Mason ("Plaintiff Ms. Mason"), by and through undersigned counsel files

their Complaint against the Defendants BP Exploration (Alaska), Inc. ("BP"),

State of Alaska ("the State"), and Gas Clip Technologies ("GCT"), individually

and/or severally, and state as follows:

*Tracy Mason, et al. v. BP Exploration (Alaska) Inc., et al.*    1
Case No.:
Complaint for Damages
Case 3:19-cv-00250-JWS   Document 1   Filed 09/12/19   Page 1 of 17

**I.  Parties**

1. Tracy Mason is over the age of 18 and is a resident of Corvallis, Montana and is employed with ASRC (Arctic Slope Regional Corporation) Energy Services, Inc. ("ASRC") working in Prudhoe Bay, Alaska.

2. Angela Mason is over the age of 18 and is a resident of Corvallis, Montana and is the wife of Mr. Mason.

3. BP leases land and operates a facility in Prudhoe Bay, Alaska on land of which Plaintiff was injured.

4. The State is a governmental entity that owns land leased by BP on land of which Plaintiff was injured.

5. GCT is a corporation incorporated in Delaware and manufactures gas detection devices and has its corporate business headquarters location in Cedar Hill, Texas.

**II.  Jurisdiction**

6. This is a personal injury, fraudulent concealment, premise liability, and product liability case for damages as a result of Mr. Mason sustaining brain injuries as a result of products liability, owner/occupier of land liability, fraudulent concealment, negligent maintenance, gross negligence, reckless endangerment, as well as, punitive damages for injuries, pain and suffering, and other damages. The events out of which this controversy arose occurred in Prudhoe Bay, Alaska.

*Tracy Mason, et al. v. BP Exploration (Alaska) Inc., et al.*  2
Case No.:
Complaint for Damages
Case 3:19-cv-00250-JWS   Document 1   Filed 09/12/19   Page 2 of 17

7. This Court has original diversity jurisdiction pursuant to 28 U.S.C. §1332 as the matter in controversy exceed the sum or value of $75,000, and the Plaintiff and Defendants are residents of different states.

### III. Facts

8. On November 25, 2017, at approximately 9:40 a.m., Mr. Mason, was working for ASRC, at which time he was severely injured as a result of being exposed to high levels of Hydrogen Sulfide gas (H2S) and possibly other toxic gas on land leased by BP and owned by the State of Alaska which almost caused his death.

9. On this date and time, Mr. Mason and his co-worker Jeff Warta (Mr. Warta) were assigned to the DSL-1 location to remove snow from the pad using a heavy equipment loader.

10. Mr. Mason and Mr. Warta operated separate loaders, and they started their shift at 6 a.m. after their toolbox meeting, they left for the DSL-1 pad.

11. Mr. Warta carried the BP radio, and Mr. Mason carried the Lisburne radio, and they both also carried gas detectors manufactured by GCT and maintained by BP.

12. Plaintiff, Mr. Mason is informed and believes that BP, and the State of Alaska or any other governmental entities, recklessly failed to inform either Mr. Mason or Mr. Warta that atmospheric gas venting was occurring.

13. Plaintiff, Mr. Mason is informed and believes that there were no red flashing lights on top of vehicles indicating gas venting in the area, no signs or road blockages, or were there any announcements of any field advisories.

14. At the time of their arrival, there was nothing in the atmosphere to suggest that gas venting was occurring.

15. During this morning, visibility was good, and there was little wind.

16. When there is little wind, venting should not occur.

17. There were no reasons for Plaintiff or Mr. Warta to suspect that venting was occurring.

18. Plaintiff, Mr. Mason is informed and believes that he followed every safety procedure.

19. Mr. Mason called the BP Pad/Drillsite Operator for access to their pad, had his radio on scan for BP radio announcements, checked for hazards on the pad, and had his H2S gas detector on him.

20. When Mr. Mason called the Pad/Drillsite Operator, an employee of BP, the operator gave Mr. Mason and Mr. Warta authority to enter the pad.

21. The Pad/Drillsite Operator failed to mention to Mr. Mason and Mr. Warta that they were conducting gas venting in the area.

22. Not until after Mr. Mason's injury, was there an announcement stating that there was gas venting in progress at the AGI pad and coming in from the LGI direction.

*Tracy Mason, et al. v. BP Exploration (Alaska) Inc., et al.* 4
Case No.:
Complaint for Damages
Case 3:19-cv-00250-JWS   Document 1   Filed 09/12/19   Page 4 of 17

23. Plaintiff Mr. Mason is informed and believes that under BP's standard operating procedure, BP is obligated to notify contractors that are coming on the property that venting is occurring and/or whether H2S or any toxic gas is present. If either or both is occurring, BP is to erect danger signs and block off dangerous areas that have the potential to cause harm.

24. Plaintiff Mr. Mason is informed and believes that BP and/or the State and/or any other Agency failed to inform ASRC or its employees that they would be conducting gas venting.

25. Plaintiff Mr. Mason is informed and believes that the State required BP to vent, and several wells (6 or 7) were vented simultaneously that morning.

26. BP personnel should have prohibited Mr. Mason and Mr. Warta from entering the area.

27. Venting should not have occurred the morning of the accident as there was little to no wind.

28. According to BP's SOP Document Number AK-OPS-EOA-NP-0021, a hazard includes vapor cloud development.

29. It was an extremely unusual weather pattern that morning. A nearby weather observation indicated a southwest wind of only three (3) mph. Other observations over the north slope also showed light southwest winds, indicating this was a prevailing condition over a large area.

*Tracy Mason, et al. v. BP Exploration (Alaska) Inc., et al.* 5
Case No.:
Complaint for Damages
Case 3:19-cv-00250-JWS   Document 1   Filed 09/12/19   Page 5 of 17

30. According to BP's standard operating procedure, the first step necessary to execute atmospheric gas venting is for the DS operator to evaluate the wind condition by staging a bleed trailer downwind of ignition sources, occupied structures, vehicle thoroughfares, etc. BP violated this step. If such evaluation were conducted, it would be clear that the vapor cloud would not travel safely as there was little to no wind coming from the southwest, which was rare for this time of year.

31. Assuming venting can take place, step two is to evaluate the area and to place "gas venting" signs or otherwise enforce an "exclusion zone" in the proximity of atmospheric venting operation. This also did not occur. No such signs or warnings were placed that morning before Mr. Mason's injury.

32. The sixth step is to monitor the bleeding operation continuously until completion and secure bleed if hazardous conditions develop including inadequate vapor cloud dispersal as indicated by a higher than 10% LEL indication outside of exclusion zone; This also was not done.

33. After entering the pad and removing snow, Mr. Mason started to smell gas which smelled like rotten eggs. At this time, Mr. Mason contacted Mr. Warta and informed him that he smelled gas. At the time of Mr. Mason's call, Mr. Warta was operating a loader traveling toward the East Access away from the gas cloud.

34. When Mr. Warta got to the East Access, he saw a large, dark, and

dense plume of gas with tinges of brown, red, and orange coming from the direction of LGI. The cloud blocked the lights on the pad. At this time, Mr. Mason was trapped facing the cloud. He quickly moved forward to turn around and get out of danger. However, the massive gas cloud engulfed his loader. At no time did the H2S gas alarm go off.

35. Once Mr. Mason arrived at the East Access where Mr. Warta was waiting for him, Mr. Mason called the Drillsite Operator to find out what was going on. This operator told Mr. Mason that he forgot that they were out there and apologized for allowing them access to the pad and not informing them of the venting at AGI and coming in from the LGI direction. The Drillsite Operator admitted to not putting out any safety measures informing anyone in the location that they were doing significant venting.

36. BP or the State of Alaska also did not immediately stop the job after Mr. Mason called the operator, informing him that they were out on the pad and a considerable gas cloud had formed.

37. Mr. Mason then called Rich Vincent, the EOA R&P Foreman, and told him what the Drillsite Operator stated, and told Mr. Vincent that he could smell gas and as a result, he and Mr. Warta were leaving the area.

38. After the call, Mr. Mason and Mr. Warta started to drive out of the area toward the warm storage area on West Dock Road. Within minutes, Mr. Mason called Mr. Warta and told him that he had to pull off to the side of the road

*Tracy Mason, et al. v. BP Exploration (Alaska) Inc., et al.* 7
Case No.:
Complaint for Damages
Case 3:19-cv-00250-JWS   Document 1   Filed 09/12/19   Page 7 of 17

because he was feeling ill. Mr. Mason pulled over at West Dock Road near the LPC intersection when he started vomiting then started to lose consciousness.

39. Mr. Warta observed Mr. Mason losing skin color. He called Mr. Vincent to declare an emergency and informed him that they needed an ambulance. Mr. Vincent called 911. Mr. Warta monitored Mr. Mason's vitals and kept him stable until the paramedics arrived. His pulse rate dropped to 30 bpm. A fire truck showed up with an oxygen bottle and gave it to Mr. Warta to give to Mr. Mason. Mr. Warta previously was a combat medic. He was given oxygen and was stabilized and transported to the MCC Medical Clinic where at approximately 1:50 p.m. Lloyd McKinney diagnosed Mr. Mason with H2S gas exposure. Mr. Mason was then medevacked to Alaska Regional Hospital, where he was hospitalized for a couple of days.

40. Mr. Mason could barely speak as his speech was severely impaired. He also had difficulty seeing and started getting severe headaches. He has been trying to work through these debilitating injuries. He continued to work as he was in fear of losing his job and making a living as he is putting his daughter through school. The headaches continually worsened, and he sought treatment with a neurologist. His brain had swollen, and they gave him steroids and anti-inflammatories to decrease the swelling.

*Tracy Mason, et al. v. BP Exploration (Alaska) Inc., et al.*    8
Case No.:
Complaint for Damages
Case 3:19-cv-00250-JWS   Document 1   Filed 09/12/19   Page 8 of 17

41. Plaintiff Mr. Mason is informed and believes that on the day of the accident, a meeting took place between Tim Gross of BP and Pat McCollor Field Services Manager and Phil King, senior managers with ASRC. Mr. Gross admitted fault and stated, "We (BP) are at fault for this, and we could have killed both of those operators, what part of 'stop the job' do we not understand." Mr. Gross also stated that the operators conducting the gas venting said they were going to have the road closed because the gas was moving back on shore heading toward the drill site.

42. Plaintiff Mr. Mason is informed and believes that BP contracted out an outfit to conduct an investigation. BP announced the results to several employees. It seems that the results exonerate BP. Many employees are appalled at the cover-up and have come forward saying that the results of the investigation are false and that basically, BP is covering up the cause of Mr. Mason's injury.

43. Plaintiff Mr. Mason is informed and believes that BP deliberately excluded Mr. Warta and Mr. Mason from being present when BP announced the results of the investigation to a group of employees. In addition, two days after the accident, ASRC issued a ToolBox First Report describing the event, including pictures. However, BP required ASRC to pull it and discard all copies of it.

44. Plaintiff Mr. Mason is informed and believes that BP is well aware that this accident was not related to Mr. Mason's loader which was thoroughly inspected without any issues including any exhaust problems, and there was were

*Tracy Mason, et al. v. BP Exploration (Alaska) Inc., et al.*     9
Case No.:
Complaint for Damages
Case 3:19-cv-00250-JWS   Document 1   Filed 09/12/19   Page 9 of 17

no clouds in the sky to suggest any fog. Such bogus arguments further support BP's intentional act of fraudulent concealment.

45. BP has reporting requirements when significant incidents occur as well as air reporting requirements when venting or a flaring event occurs.

46. BP had a duty to maintain a safe environment for personnel working in areas with the potential for encountering hydrogen sulfide (H2S) gas, as well as any toxic gas. These requirements include wearing personal H2S monitors. Also, H2S gas checks are necessary, and H2S designated areas must be marked with "Caution" or "Danger" signs.

47. Plaintiff Mr. Mason is informed and believes that drillsite operators have a duty to communicate to anyone entering well houses on their pad which wells have more than 300 ppm H2S and ensure that contractors are aware of the BPXA H2S requirement and have the appropriate monitoring devices. Supplied air is required to be worn whenever entering into an H2S atmosphere over 10 ppm.

48. Emergency escape breathing apparatus shall be available to individuals working in areas of restricted egress where an upset condition could require passing through a toxic atmosphere during an evacuation.

49. BP has a duty to make sure that personal H2S monitors and H2S testing equipment shall be approved by the appropriate safety or Industrial Hygiene department and shall be set to alarm at 10 ppm H2S.

*Tracy Mason, et al. v. BP Exploration (Alaska) Inc., et al.*     10
Case No.:
Complaint for Damages
Case 3:19-cv-00250-JWS   Document 1   Filed 09/12/19   Page 10 of 17

50. BP has a duty to make sure that H2S monitors and testing equipment shall be function tested and calibrated according to the manufacturer's recommended schedule.

51. H2S designated wellhouse shelters with a process stream at or greater than 200 ppm must be identified with a Danger sign and shall be tested before each entry.

52. The gas detectors that Mr. Warta and Mr. Mason had on them that morning provided to them by BP failed to work. Mr. Mason's detector was taken away from him at the medical clinic.

53. Defendant Gas Clip Technologies is the manufacturer of the H2S detectors.

54. Plaintiff requested that the gas monitor that Plaintiff had on him that day be given to an expert for testing; BP failed to provide such device.

55. Mr. Mason has been treating with his doctor and many of his symptoms are not improving. He has continued visual and speech disturbances, continued respiratory injuries, and severe headaches. Mr. Mason went to his internal medicine doctor after he was discharged from the hospital on November 27, 2017, who also diagnosed him with H2S poisoning. His headaches worsened as he complained of a persistent severe left-sided retro-orbital headache and a bilateral occipital headache. In January, his primary internal medicine doctor referred him to a neurologist to get an MRI of his brain. He continues to suffer

*Tracy Mason, et al. v. BP Exploration (Alaska) Inc., et al.* 11
Case No.:
Complaint for Damages
Case 3:19-cv-00250-JWS   Document 1   Filed 09/12/19   Page 11 of 17

from Dysarthria, slowed mentation, and decreased motor skills as well as severe headaches. He hasn't been able to sleep, which he attributes to a headache. Since the accident, he has required the daily use of his inhalers to help him breathe. His lungs are sensitive to pollutants. He also experiences itchiness on his legs. His doctor prescribed him Gabapentin, Prednisone, and Percocet when necessary for a severe headache. His doctor explained to him that a lot of the symptoms might be permanent, and there is nothing that can be done. He also was referred to an eye doctor Rocky Mountain Eye Center. The eye doctor indicated that he had blurred vision and dry eyes as a result of the gas poisoning and needed to be reevaluated in a month. The doctor stated that it appeared that he had slightly increased thickness that shows swelling of the onh.

56. Mr. Mason's quality of life has been severely impaired.

IV. Causes of Action-

**Count 1- Premises Liability- Defendant's BP and State of Alaska- Keep Premises Safe**

57. Plaintiff Mr. Mason incorporates by reference the foregoing paragraphs 1-56.

58. Defendants BP and State of Alaska had a duty of care to keep property that they leased and/or owned safe.

59. Defendants BP and State of Alaska breached their duty of care by failing to keep property that they leased and/or owned safe.

60. As a result of breaching their duty of care, Mr. Mason was severely and permanently injured.

61. The Defendants BP and State of Alaska caused Mr. Mason to suffer damages.

**Count II- Fraudulent Concealment-Defendant BP**

62. Plaintiff Mr. Mason incorporates by reference the foregoing paragraphs 1-61.

63. Defendant BP caused Mr. Mason harm by fraudulently concealing the nature of the injury that caused Mr. Mason severe, permanent, and debilitating injuries.

64. Plaintiff Mr. Mason seeks compensatory and punitive damages for blatantly concealing the nature of the harm and the chemicals that were in the tank that caused Plaintiff Mr. Mason's injury.

65. Such concealment caused Mr. Mason's doctors not to be aware of how to best medically treat Plaintiff Mr. Mason.

**Count III- Product's Liability- Negligence Per Se (Manufacturer's Defect)-Gas Clip Technologies**

66. Plaintiff Mr. Mason incorporates by reference the foregoing paragraphs 1-65.

67. Defendant Gas Clip manufactures H2S gas detectors.

*Tracy Mason, et al. v. BP Exploration (Alaska) Inc., et al.* 13
Case No.:
Complaint for Damages
Case 3:19-cv-00250-JWS   Document 1   Filed 09/12/19   Page 13 of 17

68. Plaintiff Mr. Mason was wearing a H2S gas detector manufactured by Defendant.

69. Plaintiff Mr. Mason was exposed to high levels of H2S gas.

70. Defendant's H2S gas detector was defective as it failed to go off.

71. As a result of Defendant's H2S gas detector not going off, Plaintiff Mr. Mason suffered H2S exposure causing significant injuries.

72. At all times, Plaintiff Mr. Mason was utilizing the product as it intended to be used.

**Count IV- Product's Liability- Strict Liability -Gas Clip Technologies**

73. Plaintiff Mr. Mason incorporates by reference the foregoing paragraphs 1-72.

74. Plaintiff Mr. Mason was injured by a defect in a product which the defendant made.

75. The product was defective.

76. The product was defective when it left the possession of the defendant.

77. A defect in the product was a legal cause of the injury.

**Count V- Plaintiffs Loss of Consortium-All Defendants**

78. Plaintiffs incorporate by reference the foregoing paragraphs 1-77.

79. At the time of the accident complained of in the Plaintiffs' Complaint, the Plaintiffs were married and that the Plaintiffs continue to be married.

*Tracy Mason, et al. v. BP Exploration (Alaska) Inc., et al.*     14
Case No.:
Complaint for Damages
Case 3:19-cv-00250-JWS   Document 1   Filed 09/12/19   Page 14 of 17

80. That as a result of the wrongful acts of the Defendants, and each of them, the Plaintiffs were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

81. That all the injuries and damages were caused solely and proximately by the actions of the Defendants.

**Count VI - Intentional Infliction of Emotional Distress-All Defendants**

82. Plaintiffs incorporate by reference the foregoing paragraphs 1-81.

83. As a result of the intentional and extreme and outrageous conduct by Defendants and its employees, Defendants caused Plaintiffs to suffer damages including medical injuries and severe emotional distress.

**Count VII-Negligent Infliction of Emotional Distress-All Defendants**

84. Plaintiffs incorporate by reference the foregoing paragraphs 1-83.

85. As a result of the reckless and negligent conduct by Defendants and its employees, Defendants caused Plaintiffs to suffer damages including medical injuries and severe emotional distress.

*Tracy Mason, et al. v. BP Exploration (Alaska) Inc., et al.* 15
Case No.:
Complaint for Damages
Case 3:19-cv-00250-JWS   Document 1   Filed 09/12/19   Page 15 of 17

WHEREFORE, the Plaintiffs jointly as husband and wife, demand judgment against the Defendants, jointly and severally, in the amount of TEN MILLION DOLLARS ($10,000,000.00), plus costs, pre-judgment interest, post judgment interest, attorney's fees, and any other costs this court deems appropriate.

Respectfully submitted,

Dated September 11, 2019

/s *Sara L. Bloom*
Sara L. Bloom
Alaska Bar No. 1509071
Attorneys for Plaintiffs Tracy and Angela Mason

*Tracy Mason, et al. v. BP Exploration (Alaska) Inc., et al.* 16
Case No.:
Complaint for Damages
Case 3:19-cv-00250-JWS   Document 1   Filed 09/12/19   Page 16 of 17

*Tracy Mason, et al. v. BP Exploration (Alaska) Inc., et al.* 17
Case No.:
Complaint for Damages
Case 3:19-cv-00250-JWS   Document 1   Filed 09/12/19   Page 17 of 17